IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THOMAS J. HOOGHE                                                               PLAINTIFF

VS.                                              CIVIL ACTION NO.: 3:17CV272-TSL-LRA

WARDEN FRANK SHAW                                                         DEFENDANT

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This matter came before the Court on the Defendant's Motion for Summary Judgment [Doc. #25] and the Plaintiff's Motion for Injunctive Relief [Doc. #31]. The Motion for Summary Judgment is based on the Plaintiff's allegation that the Defendant wrongfully withheld the Plaintiff's 2017 *Swimsuit Edition* of *Sports Illustrated*, failed to provide prior notice that the magazine would be withheld, and substituted his own rule for the policy of the Mississippi Department of Corrections on censuring incoming mail. The Motion for Injunctive Relief is based on Plaintiff's claim that he was moved from the East Mississippi Correctional Facility to the Central Mississippi Correctional Facility in retaliation for filing this lawsuit, and, while he was at CMCF, the possessions that he left behind at EMCF were taken. For the reasons set out more fully below, the undersigned is of the opinion that the Plaintiff's Motion for Injunctive Relief should be denied and the Defendant's Motion for Summary Judgment be granted.

**Facts**

The Plaintiff, Thomas J. Hooghe, is an inmate housed at the East Mississippi Correctional Facility. The Defendant, Frank Shaw, is the Warden of that facility.

1

Hooghe's claims are based on his Complaint and augmented by his testimony at an omnibus hearing held on February 14, 2018, and by the other documents he has filed in this action. Hooghe subscribes to the *Sports Illustrated* magazine. According to Hooghe, in February, 2017, he realized that he had not received the current magazine, which was the annual *Swimsuit Issue*. When he asked one of the employees in the mailroom if they had seen it, he was told that the Defendant said he could not have it.

On February 21, 2017, Hooghe made a complaint through the Administrative Remedy Program regarding the censorship of the *Swimsuit Issue* of *Sports Illustrated*. His grievance was accepted for review, but denied on the merits on February 27. The reason it was denied was that "Inmates are not allowed to have any nudity in any books or magazine per Warden Shaw. Any questions please be advised to write Warden Frank Shaw." Hooghe pressed his claim, complaining in his February 28 response that he did not receive notice of the rejection and that the magazine did not violate MDOC regulations. On the same date, Hooghe received this message via an "Inmate Request Form;"

> This request is to inform you that a Sports Illustrated Magazine was delivered to E.M.C.F. via USP. The Magazine contains pictures that Offenders are not allowed to have as per the "Nudity Policy." You have 15 days to either mail the magazines home or back to the company for a return. If you have any questions feel free to write Warden Shaw an inmate request form due to the fact that he is already aware of this matter.

[25-4, p. 1].

Ultimately, on March 7, Hooghe received this response from Deputy Warden N. Hogans: "As stated to you in the first step response, the mailroom has told you in person

and in writing that you are not allowed that magazine because of nudity.  The proper steps were taken.  Relief denied."

There are, potentially, three different policies that govern Hooghe's situation.  The first, the Mississippi Department of Corrections policy that was in effect in February 2017, was titled "Offender Mail Services," SOP 31-01-01.  The initial part of that policy dealt in a general manner with the handling of inmate's incoming and outgoing mail and contains the following provision:  "Incoming mail may be determined to be a threat to the institution and returned to the sender, if, in the opinion of the Warden, it could reasonably be considered to . . . [c]ontain sexually explicit material or material which features nudity which by its nature or content poses a threat to the security, good order, or discipline of the facility or facilitates criminal activity."  (SOP 31-01-01, pp. 9-10, lines 406-408, 426-428).  Later, there is a more specific policy regarding publications, which states, in part "Offenders will not be permitted to receive through the mail, certain types of publications containing pictures depicting nudity and some types of sexual acts."  (SOP 31-01-01, p. 13, lines 614-616).  The procedure for refusing a publication follow, and it states that printed material that includes "presentation of sexual behavior which threatens the security or orderly running of the institution or facility" was subject to being censored.  (SOP 31-01-01, p. 14, lines 651-52).  That section also provides, "When a publication is refused, the offender and the publisher, distributor, or vendor will be sent a notice of the received publication, date of receipt and reason for refusal."  (SOP 31-01-01, p. 14, lines 654-55).  "Nudity" was defined in the policy as "Any depictions where genitalia or

female breasts are exposed." (SOP 31-01-01, p. 2, line 52). The policy took effect on February 1, 2016.

Shortly after MDOC's policy went into effect, on February 26, 2016, the Defendant issued a "Warden's Bulletin" numbered #01-16. It reads as follows:

> Please be advised that effective February 1, 2016, Mississippi Department of Corrections revised their Offender Mail Services Policy to include the following statement:
>
> Nudity – Any depictions where genitalia or female breasts are exposed are prohibited. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.
>
> This will include all magazines that contain nudity.
>
> The mailroom will no longer accept these types of periodicals or magazines. Also, all types of pictures, magazines or periodicals will be considered contraband effective March 1, 2016.

Finally, there is the Handbook that is provided to all inmates entering the East Mississippi Correctional Facility, excerpts of which were attached to Hooghe's response to the Defendant's Motion for Summary Judgment.[1] The title page to that Handbook shows that it was revised in November 2017. Under the caption "Procedures for Publications," the following statement appears: "Inmates are permitted to receive through the mail certain types of publications containing pictures depicting nudity and some types of sexual acts unless the printed material is refused under guidelines of 'Refusal of Publications' below." Under "Refusal of Publications," the Handbook states "Printed

---

[1] It appears that Hooghe may have attached excerpts from two different versions of the Handbook, since similar language appears at page 3 of Exhibit 28-1 and on page 4 of the same Exhibit. If that is the case, it is not important which version is the latest, since the language quoted appears to be the same.

material shall only be refused if it interferes with legitimate penological objectives (deterrence of crime by confinement, rehabilitation of inmates or maintenance of internal security within the facility). In making this determination, the printed material must fall into one of the following described categories for reasons of rejection." The category relevant to this case is as follows:

> The printed material contains a presentation of sexual behavior which threatens the security or orderly running of the institution or facilities [sic] criminal activity. The general standard to apply in determining whether or not sexually explicit material [is] subject to rejection under this regulation [is] as follows:
>
> - Penetration
> - Homosexual (of the same sex as institution population)
> - Sado-Masochistic
> - Bestiality
> - Involves children

The Handbook also provides, "Upon a publication being refused, the inmate shall be sent a notice of the received publication, date of receipt and reason for refusal."

Warden Shaw provided an affidavit supporting the Motion for Summary Judgment. The following allegations provide the rationale for his refusal to permit Hooghe's *Sports Illustrated* to be provided to him:

> 5.    One of the chief objectives of MDOC's anti-nudity policy is to maintain order and security within the prison setting. Sexually-explicit photographs depicting nudity have been used by inmates in the past as a form of currency, which creates a safety issue. The value placed on these types of materials has led to the creation of debt, extortion, and violence among inmates. Inmates have also been known to use these types of materials to sexually harass female staff and to engage in inappropriate sexual behavior, such as masturbation, in front of female staff.

6.     Another primary objective of the nudity policy is to maintain rehabilitative goals for offenders. Exposure to sexually explicit materials containing nudity could reinforce thought patterns or behaviors that led certain offenders to commit sex crimes.

7.     The Sports Illustrated 2017 Swimsuit Issue contains multiple photographs which depict nudity and sexually explicit material, as defined by MDOC policy. Therefore, Thomas Hooghe and other offenders at EMCF were not allowed to receive it.

8.     On February 28, 2017, Mr. Hooghe was advised in writing by Mail Officer Strickland that the magazine in question had been delivered to EMCF and that it contained pictures which violate MDOC's nudity policy. . . . Officer Strickland's notice further advised Plaintiff that he had 15 days to either mail the magazine home or to send it back to the company for a return.

9.     Requiring EMCF officials to redact or remove those portions of publications that violate MDOC's nudity policy before permitting inmates to receive the publications would force EMCF to divert significant additional resources to its mailroom staff and would place a strain on the security and orderly operation of the facility.

**Argument:**

Relying primarily on the EMCF policy, Hooghe argues that the MDOC policy on refusing publications was unconstitutionally applied to his *Sports Illustrated* magazine, causing him to be denied access to it. He also argues that Warden Shaw acted outside the scope of authority granted to him by the Mississippi Department of Corrections when he refused to allow acceptance or distribution of Hooghe's *Sports Illustrated* magazine. Finally, Hooghe complains that he was denied due process by the Warden's failure to give him proper notice that his magazine had been refused.

Hooghe has chosen to highlight only one portion of MDOC's mail policies – the language under "Refusal of Publication." He argues that this is the only section that

6

pertains to magazine subscriptions, and, under that heading, the policy only forbids publications containing "[p]resentation of sexual behavior which threatens the security or orderly running of the institution or facilities." The word "nudity" does not appear in that section; therefore, Hooghe asserts that the Warden could not ban publications solely because they contained nudity.

### **Analysis**

It is well settled that "a prison inmate 'retains those [constitutional] rights that are not inconsistent with his status as a prisoner....' " *Turner v. Saffley*, 482 U.S. 78, 95 (1987). For this reason, prisoners enjoy the protections of the First Amendment except to the extent that prison regulations curtailing those protections are "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989). In analyzing whether a regulation is "reasonably related," a court must consider four factors:

(1) whether the regulation is "rationally related" to a legitimate penological goal;

(2) whether alternative means of exercising First Amendment rights remain open;

(3) the impact that accommodating the asserted right will have on other prisoners and prison employees; and

(4) whether there are easy and obvious alternative means of accommodating the asserted right.

*Id.* at 414–18. "[R]ationality is the controlling factor," *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 607 (5th Cir.2008), and the remaining factors are best understood

as indicators of rationality. See *Scott v. Miss. Dep't of Corr.,* 961 F.2d 77, 80–81 (5th Cir.1992).

Prison regulations restricting inmates' First Amendment rights must operate in a neutral fashion. *Thornburgh*, 490 U.S. at 415 (quoting *Turner*, 482 U.S. at 90). This requirement means that "the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression." *Id*. Prison regulations that "draw distinctions between publications solely on the basis of their potential implications for prison security" will be considered to be neutral. *Id*. at 415–16. In this case, the regulations did not operate to bar any information from inmates other than what was determined, after an individualized review of the publication, to fall within the category of publications that should be barred in accordance with the applicable regulations. Thus, the restrictions are content neutral. *See Thornburgh*, 490 U.S. at 416-17.

Under *Turner*, the standard for determining whether there is a rational connection between the challenged regulation and its asserted objectives is highly deferential. The prisoner bears the burden of showing that the regulations, as applied, are not reasonably related to legitimate penological objectives. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Keys v. Torres*, 737 F. App'x 717, 719 (5th Cir. 2018) (*citing Prison Legal News v. Livingston*, 683 F.3d 201, 214-15 (5th Cir. 2012)). Moreover, "the court does not inquire whether there is such a connection in fact, but whether the regulation's enacters could have rationally concluded there is one. Scientific or expert evidence need not be

8

unanimous in support of the connection." *Aiello v. Litscher*, 104 F. Supp. 1068, 1075 (W.D. Wisc. 2000), *citing Amatel v. Reno*, 156 F.3d 192, 200 (D.C. Cir. 1998) ("The evidence is simply not conclusive on the efficacy of a ban on pornography in promoting prisoners' rehabilitation. For judges seeking only a reasonable connection between legislative goals and actions, scientific indeterminacy is determinative.")

Alternatively, the prisoner may establish that the regulations are an "exaggerated response" to such concerns. *Turner*, 482 U.S. at 87. Although courts must give "substantial" deference to prison officials' judgment, the officials must do more than merely show "a formalistic logical connection between [its censorship decisions] and a penological objective." *Beard v. Banks*, 548 U.S. 521, 535 (2006). Instead, the officials must show a reasonable relation in light of the "importance of the rights [here] at issue." *Id*. at 533. To be entitled to summary judgment, then, the record must be "sufficient to demonstrate that the Policy is a reasonable one." *Id*.

Here, the prison regulations at issue give EMCF's Warden discretion to determine which publications pose a threat and should be barred. For example, MDOC's SOP 31-01-01 allows mail to be returned if "*in the opinion of the Warden*, it could reasonably be considered to… [c]ontain sexually explicit material or material which features nudity...." (Emphasis added.) Warden Shaw gives three reasons for prohibiting the *Sports Illustrated Swimsuit Issue*. First, he relates that photographs depicting nudity have been used as a currency. This creates a safety issue because the value placed on these pictures may lead to debt, extortion, or violence. Second, Shaw notes that such photographs have

9

been used to sexually harass female staff and to demonstrate inappropriate sexual behavior to female staff members.  Finally, the thoughts generated by sexually explicit photographs are inimical to the rehabilitation of offenders charged with sex crimes.  As stated earlier, Warden Shaw is not required to prove that removing the *Swimsuit Issue* from delivery will eliminate his concerns; he need only show that his censorship was reasonable, given his concerns. The undersigned is of the opinion, therefore, that it has been sufficiently shown that prohibiting the dissemination of this material to inmates is rationally related to a legitimate penological purpose.

As to the second prong of the *Turner* analysis – whether there are alternative means of exercising the right – the court must first identify the "right" at issue. *Thornburgh*, 490 U.S. at 417.  The undersigned has reviewed the 2017 *Swimsuit Issue* of *Sports Illustrated*, and finds that it contains several photographs that, under MDOC's definition, include nudity.  Under MDOC's policies, Hooghe does not have a right to view a magazine containing nudity.  Hooghe's arguments that other institutions permit offenders to have the *Swimsuit Issue* are unpersuasive.  In *Thornburgh*, as here, the Federal Bureau of Prisons [FBP] regulations gave individual wardens the discretion to exclude books from their own facilities for content-based reasons.  490 U.S. at 417.  Because of those individualized determinations, inconsistencies arose across the various facilities within the FBP.  The Supreme Court concluded that those inconsistencies did not support a First Amendment claim, noting that it was appropriate to exclude materials

that were "determined by the warden to create an intolerable risk of disorder under the conditions of a particular prison at a particular time." 490 U.S. at 417.

The undersigned notes that Hooghe's complaint is limited to EMCF's withholding the *Swimsuit Issue* of *Sports Illustrated*. He has had no difficulty receiving the remaining issues of the magazine. Hooghe argues that he will, because his magazine was withheld, lose the benefit of "all the information and knowledge I would have gained from reading that particular issue," [Transcript, p. 90, lines 24-25; p. 91, line 1). The undersigned's review of that issue revealed that, beyond the photographs and the advertisements, there was virtually no content. Hooghe will not be deprived of any substantive sports information by missing that one issue; therefore, his right of access to that information is unimpaired.

 "The third factor to be addressed under the *Turner* analysis is the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison." *Thornburgh* at 418. This factor requires courts to assess whether "the class of publications to be excluded is limited to those found potentially detrimental to order and security ... [and] [w]here ... the right in question 'can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike.' [In such cases], the courts should defer to the 'informed discretion of corrections officials.'" *Id*. at 418, *quoting Turner*, 482 U.S. at 90. In this case, the photographs in the *Swimsuit Issue* could compromise the safety of the institution's staff and other

11

inmates. Again, only this particular issue has been withheld, and the undersigned finds that, on balance, Hooghe's desire for the magazine is outweighed by its potential harm.

The existence of easy alternatives to the challenged restriction may show that the regulation is not reasonable. If, therefore, a prisoner can show an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard. *Turner*, 482 U.S. at 90–91. Hooghe has not offered any alternatives to prohibition of the magazine. One obvious alternative would be to remove the offensive material and permit Hooghe to have the remaining pages; however, Warden Shaw stated in his affidavit that requiring EMCF personnel to remove pages would require that "significant additional resources" be taken from the mailroom staff. Moreover, having reviewed the magazine in question, the undersigned can state that the only remaining content would be advertising.

Thus, the undersigned concludes that the regulations in question are permissible as being reasonably related to a valid penological purpose. The undersigned is further of the opinion that Warden Shaw was exercising the authority properly given to him by the regulations; therefore, his rejection of Hooghe's 2017 *Sports Illustrated Swimsuit Issue* magazine was not an *ultra vires* act.

The remaining claim made in Hooghe's Complaint was that the decision to prohibit dissemination of the magazine was done in a manner contrary to the applicable regulations and was, therefore, a denial of due process. Hooghe says that, when he first

inquired about the missing *Sports Illustrated* issue, he was told by one of the employees in the mailroom that he could not have it.  On February 21, 2017, Hooghe submitted a grievance through the Administrative Remedy Program, where he pressed both the substantive part of his claim and his due process issue.  His claim was accepted for review on February 23, 2017.  The First Step Response came from Ms. Steele on February 27, and it stated "Inmate are not allowed to have any nudity in any books or magazine per Warden Shaw.  Any question, please be advised to write Warden Frank Shaw."  Not satisfied with that response, Hooghe asked for a Second Step review on February 28.  Also on February 28, 2017, he received notice, via an Inmate Request Form, that the magazine had been withheld "as per the 'Nudity Policy,'" and he had fifteen days to either mail it home or back to the publisher.  The Form also said, "If you have any questions feel free to write Warden Shaw an inmate request form due to the fact that he is already aware of this matter."  The Form was signed by "Mr. Strickland."  The Second Step Response came from Deputy Warden Hogans on March 7, 2017, confirming that the magazine was properly withheld and asserting that the proper steps were taken.

      Hooghe is correct in asserting that MDOC's policies provided that a prisoner would be notified when a publication was rejected, and he builds his due process argument around this requirement.  Hooghe assumes, however, that the only constitutionally acceptable manner of notifying him that his magazine had been refused was by a particular form sent immediately after the decision was made.  "Due process pertains to the right to participate in government decision making.  The 'notice' required

13

by due process is notice of when, where, and how one can be heard before a decision becomes final." *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012). The documentation of the ARP grievance that Hooghe submitted shows that he was, indeed, permitted to submit a written claim, which was answered approximately a week later. Hooghe was able to object to the response, and the final decision was communicated to him on March 2. Hooghe was given the right to protest the decision and appeal the initial denial, which is the essence of due process; therefore, this claim is without merit.

### Motion for Injunctive Relief

This Motion is based on the loss of certain property that Hooghe was compelled to leave behind when Hooghe was transferred from EMCF to CMCF on June 13, 2019. Hooghe remained at CMCF until August, 2019. When he returned to EMCF, Hooghe discovered that his property, which included legal papers, law books, and magazines, was missing, and he sent a letter to counsel for the Defendant and filed this Motion.

Warden Shaw asked that an investigation commence regarding the missing items. The Investigator, LeMarcus Ruffin, found that Hooghe had been transferred to CMCF for medical reasons related to a scheduled medical procedure. The initial response to Hooghe was that all of the material left behind was state-issued property. Subsequently, Hooghe was able to document all of the items that he had claimed, and Ruffin conducted a further investigation. He concluded as follows:

> During the course of this investigation it was determined that Inmate Hooghe did receive legal mail in the course of his 4 ½ years of being at EMCF. EMCF Investigation Department determined that Property Officer Charneka Young failed to complete her job duties. Property Officer Young

14

> did not complete an inventory as part of her job description on Inmate Hooghe's property once received from Housing Unit 4 Delta. EMCF Investigation Department was unable to verify that Inmate Hooghe kept all of his legal documents once he received from EMCF mailroom (exhibit 6). Corrective action on Officer Young's lack of job performance is recommended.

This report was completed on November 14, 2019. On December 23, Ruffin made another report, in which he noted that he had spoken with Hooghe and was "in the process of obtaining and returning all legal paperwork filed with the court in Inmate Hooghe's lawsuit, as well as the ARPs and ILAP paperwork that was submitted, along with three law books he identified. I expect to have these legal materials provided to Inmate Hooghe within the next two weeks." On January 6, Shaw filed a Supplemental Response in which he reported that a copy of all documents filed in this case, as well as three law books, had been delivered to Hooghe. Hooghe signed a receipt for that material. Hooghe has filed a lawsuit in the Circuit Court of Lauderdale County related to the loss of personal items.

Hooghe's claim is now that this entire movement and loss of property was orchestrated by Warden Shaw in retaliation for Hooghe's filing this lawsuit. The law on retaliation is well-settled: "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v.* Powell, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). Causation, in turn, requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred."

*McDonald*, 132 F.3d at 231.  Courts regard retaliation claims with skepticism, "lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

Hooghe's claim satisfies the first element of the test, as the right of access to the courts is a right that is protected from retaliation.  *Id*.  He has not, however, in the opinion of the undersigned, demonstrated that Warden Shaw intended to retaliate against him for the exercise of that right, an element on which he has the burden of persuasion.  Hooghe was moved from EMCF in June and returned from CMCF in August.  For his claim to be plausible, employees from both prisons would have to be complicit in this far-ranging scheme, a theory about which the undersigned is doubtful.  After he returned, the Warden instigated an investigation into the loss of Hooghe's property, and it was ultimately returned to him.  Since that time, Hooghe's ability to pursue his case appears unimpaired.

It is difficult to see how this move would have impaired Hooghe's access to the courts, in any event.  Hooghe argues that by denying him access to his legal papers, he was unaware that the Defendant had filed a response to his Motion for Injunctive Relief past the due date set by the Court.   Hooghe contends that he would have objected to any time enlargement, thus precluding the response from being filed.  The undersigned disagrees.  While the Court certainly does not look with favor on pleadings that are filed out of time, particularly where an extension was not sought and obtained, extensions are liberally granted to all parties in litigation, especially where good cause is shown.  Had

16

the Defendant asked for an extension, it would likely have been granted, even over the Plaintiff's objection. Hooghe would have been given the same courtesy.

Hooghe's property has been returned to him through the investigative efforts of EMCF personnel. The officer whose negligence caused the loss of Hooghe's property committed a random and unauthorized act, for which she has been reprimanded, thereby excusing any pre-deprivation due process violation. *Parratt v. Taylor*, 451 U.S. 527, 541 (1981). Hooghe has filed a lawsuit in state court to seek damages, which permits him to assert a claim for post-deprivation damages. *Id*. at 544. The only injury that Hooghe has suffered as a result is the loss of a chance to object at the Defendant's filing a late response, which would have been unavailing.

A plaintiff seeking a preliminary injunction must clearly show:

(1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest.

*Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F. 3d 445, 457 (5th Cir. 2017). The undersigned is of the opinion that the Plaintiff cannot prevail on the merits. Injunctive relief is not appropriate where there is an adequate remedy at law, such as an award of damages. *Merritt Hawkins & Assoc., L.L.C. v. Gresham*, 861 F.3d 143 (5th Cir. 2017). When Hooghe originally filed his Motion, he sought the return of his property, including his legal documents. That represented an appropriate claim for injunctive relief, as money damages would not likely have been available for an inability to pursue this

17

lawsuit. However, now that the documents have been returned, there is no claim appropriate for injunctive relief.

For the above reasons, the undersigned Magistrate Judge recommends that the Defendant's Motion for Summary Judgment [25] be **granted** and this cause of action be dismissed pursuant to FED. R. CIV. P. 56(b), with prejudice. The undersigned further recommends that the Plaintiff's Motion for Injunctive Relief [31] be denied. Final Judgment should be entered.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 21st day of February 2020.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE